# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

**No. 21-1221V**

| | |
|---|---|
| THOMAS KENNY,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: August 10, 2026 |

*Jimmy A. Zgheib, Zgheib Sayad, P.C., White Plains, NY, for Petitioner.*

*Sarah B. Rifkin, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On April 15, 2021, Thomas Kenny filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving an influenza ("flu") vaccine on August 17, 2020. Petition at 1 The matter was assigned to the "Special Processing Unit" (the "SPU"), and following briefing from the parties, on September 9, 2025, I ruled that Petitioner was entitled to compensation for his injury. (ECF No. 32).

The parties were unable to informally resolve the issue of damages, however, and further briefing from the parties on those issues was ordered. For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount of $80,000.00

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

for his past pain and suffering, and $818.66 for his past unreimbursable expenses (a sum to which the parties have agreed), for a total award of $80,818.66**.**

## I. Legal Standard – Pain & Suffering

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000.00" Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims. *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). *Graves* maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

## II. Prior SIRVA Compensation Within SPU[3]

### A. Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of July 1, 2026, 5,790 SPU SIRVA cases have been resolved since the inception of SPU more than ten years before. Compensation has been awarded in the vast majority of cases (5,575), with the remaining 215 cases dismissed.

3,139 of the compensated SPU SIRVA cases were the result of a ruling that the petitioner was entitled to compensation (as opposed to an informal settlement), and therefore reflect full compensation as warranted by the record.[4] In only 392 of these cases, however, was the amount of damages determined by a special master in a reasoned decision or ruling.[5] As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters

[3] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[4] The remaining 2,436 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Because multiple competing factors may cause the parties to settle a case (with some having little to do with the merits of an underlying claim), these awards from settled cases do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

[5] The rest of these cases resulting in damages after concession were either reflective of a proffer by Respondent (2,710 cases) or stipulation (37 cases). Although all proposed amounts denote *some* form of agreement reached by the parties, those presented by stipulation derive more from compromise than instances in which Respondent formally acknowledges that the settlement sum itself is a fair measure of damages.

themselves), provide the most reliable guidance in deciding what similarly-situated claimants should also receive.[6]

The data for all categories of damages decisions described above reflect the expected differences in outcome, summarized as follows:

| | **Damages Decisions by Special Master** | **Proffered Damages** | **Stipulated Damages** | **Stipulated[7] Agreement** |
|---|---|---|---|---|
| **Total Cases** | *392* | *2,710* | *37* | *2,436* |
| **Lowest** | $25,000.00 | $4,000.00 | $37,013.60 | $1,000.00 |
| **1st Quartile** | $64,811.00 | $57,596.44 | $82,181.20 | $30,000.00 |
| **Median** | **$85,973.93** | **$76,428.29** | **$109,582.59** | **$46,000.00** |
| **3rd Quartile** | $125,007.45 | $105,000.00 | $160,000.00 | $72,000.00 |
| **Largest** | $1,569,302.82 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B. Pain and Suffering Awards in Reasoned Decisions

In the 392 SPU SIRVA cases in which damages were determined via reasoned decision or ruling, compensation for a petitioner's actual or past pain and suffering varied from $25,000.00 to $215,000.00, with $85,000.00 as the median amount. Only eleven of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[8] In one of these cases, the future pain and suffering award was limited by the statutory pain and suffering cap.[9]

---

[6] Of course, even though *all* independently-settled damages issues (whether by stipulation/settlement or proffer) must still be approved by a special master, such determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

[7] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[8] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

[9] *Joyce v. Sec'y of Health & Hum. Servs.*, No. 20-1882V, 2024 WL 1235409, at *2 (Fed. Cl. Spec. Mstr. Feb. 20, 2024) (applying the $250,000.00 statutory cap for actual and future pain and suffering set forth in Section 15(a)(4) before reducing the future award to net present value as required by Section 15(f)(4)(A)); *see Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552, 554-55 (Fed. Cir.1994) (requiring the application of the statutory cap before any projected pain and suffering award is reduced to net present value).

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In nine cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

## III. The Parties' Arguments

The only issue for resolution is the amount of compensation to be awarded for Petitioner's pain and suffering. Petitioner seeks $100,000.00, while Respondent has countered with $45,000.00.

Petitioner characterizes his injury as a moderate-to-severe SIRVA characterized by nearly three years of persistent pain, 18 PT sessions, six injections (four corticosteroid and two trigger point), and one MRI. Brief at 6. Petitioner also emphasizes his severe pain levels which he states ranged from 6/10 to 10/10. *Id.* He favorably compares the facts and circumstances in his case to those suffered by the petitioners in *Parsons, Boyd, Accetta,* and *Binette*[10] - decisions featuring past pain and suffering awards ranging from $90,000.00 to $130,000.00. Brief at 5-6.

[10] *Parsons v. Sec'y of Health & Hum. Servs.*, No. 19-1150V, 2023 WL 9060490 (Fed. Cl. Nov. 30, 2023) (awarding $90,000.00 for past pain and suffering); *Boyd v. Sec'y of Health & Hum. Servs.*, No. 21-0850V, 2024 WL 4720106 (Fed. Cl. Oct. 8, 2024) (awarding $90,000.00); *Acetta v. Sec'y of Health & Hum. Servs.*,

In contrast, Respondent argues $45,000.00 is reasonable and consistent with prior cases involving gaps or delays in treatment and significant comorbidities. Response at 11. Respondent cites *Brennan* and *Schwalm* as comparable cases involving initial treatment delays and short treatment courses with lingering symptoms.[11] *Id.* at 11-12.

## IV. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the filed medical records, affidavits, and sworn declarations and all assertions made by the parties in written documents. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

A thorough review of the medical records reveals that Mr. Kenny suffered a moderate SIRVA injury, albeit with severe pain levels, that was ultimately well-managed through conservative treatment such as PT, steroid injections, and prescription pain medication. Between January 13 and March 29, 2021, Petitioner attended 19 PT sessions overall. He also received four corticosteroid injections to manage his pain, which the records reflect worked well in quelling the most severe symptoms. When he initially sought treatment, Petitioner reported 10/10 pain levels, although it is reasonable to conclude that given the over four-month delay in seeking treatment, Petitioner's pain levels were not likely that severe consistently. Petitioner again reported 10/10 pain during his initial PT evaluation. Ex. 6 at 3. Once Petitioner began PT however, his pain levels began to consistently drop. One month into PT and six months post-vaccination, Petitioner rated his pain at 5/10 and had almost normal ROM. Ex. 5 at 69. By April 2021, Petitioner reported to his orthopedist that his shoulders were "feeling better" and that his primary complaint now was bilateral hip and knee pain. Ex. 9 at 7.

---

No. 1-1731V, 2021 WL 1718202 (Fed. Cl. Spec. Mstr. Mar. 31, 2021) (awarding $95,000.00); *Binette v. Sec'y of Health & Hum. Servs.*, No. 16-0731V, 2019 WL 1552620 (Fed. Cl. Mar. 20, 2019) (awarding $130,000.00).

[11] *Brennan v. Sec'y of Health & Hum. Servs.*, No. 20-1844V, 2024 WL 4977140 (Fed. Cl. Spec. Mstr. Oct. 28, 2024) (awarding $40,000.00 in pain and suffering); *Schwalm v. Sec'y of Health & Hum. Servs.*, No. 21-66V, 2024 WL 1740482 (Fed. Cl. Spec. Mstr. Mar. 21, 2024) (awarding $50,000.00).

Petitioner's comorbid body pain of unknown etiology complicates assessing the overall duration of Petitioner's compensable symptoms. Petitioner first saw a rheumatologist on March 22, 2021, where he indicated that his right shoulder had been hurting since August due to a vaccination, but that thereafter he had begun to experience pain in his left shoulder, both knees, and his hips. Ex. 7 at 13. From that point forward, Petitioner complained of waxing and waning pain in all of those joints, not just his right shoulder.

During this time, however, Petitioner's SIRVA symptoms progressively improved. By May 25, 2021, Petitioner indicated that he was "doing better overall," with only "mild, short lived" stiffness in his shoulders. Ex. 10 at 16. On July 28, 2021, Petitioner complained of returning severe right shoulder pain and was administered a steroid injection. *Id.* at 11-13. By August 19, 2021, Petitioner reported to his PCP during an annual exam that his shoulder pain had resolved and he had normal range of motion. Ex. 12 at 9-10. When Petitioner returned to his rheumatologist on October 18, 2021, he noted how helpful the injections had been and that his daily use of meloxicam further relieved his symptoms, and he only reported occasional mild aching pain, particularly on days where he did not take meloxicam. Ex. 10 at 5. By February 15, 2022, Petitioner reported that his symptoms were diminished to the point where he was only taking meloxicam sporadically, sometimes only once weekly. Ex. 14 at 2. Thereafter, he did not seek any medical care for approximately fifteen months and when he next saw his rheumatologist on May 25, 2023, he only reported pain in his left shoulder, not his right. Ex. 16 at 10-13.

In light of the foregoing, the record supports the conclusion that Petitioner's SIRVA-related symptoms did not persist for much longer than his October 18, 2021, rheumatology appointment. Although Petitioner reported mild right shoulder pain at that time, it appears to have been occasional rather than consistent, given that he had just reported during an annual physical that his right shoulder issues had resolved. Petitioner's symptoms only improved from there, as he was able to taper off daily meloxicam usage. Given the presence of his comorbid degenerative joint disease, it is not readily apparent beyond October 2021 how much of Petitioner's right shoulder symptoms could be attributed to his SIRVA, versus whatever rheumatologic issues that were producing pain in his left shoulder, hips, and knees as well. Ultimately, the record supports a finding that Petitioner's compensable pain persisted for approximately 15 months.

Given this temporal framework, Petitioner's cited cases involve awards based on more severe injuries. Petitioner's best comparable cases, *Parsons* and *Accetta*, present similar but ultimately more severe injuries than the instant case. All three cases involve initial reports of severe pain (up to 10/10) which were ultimately reduced through the use of PT and pain medication. Mr. Kenny undoubtedly was more aggressive in treating his symptoms, with almost double the PT compared to the *Parsons* and *Accetta* petitioners,

but the overall duration of his compensable injury is *far* shorter than those cases. *Parsons* was noted as having suffered a moderate SIRVA that was "noteworthy for its duration, spanning over five years." *Parsons*, 2023 WL 9060490, at *9. The *Accetta* petitioner also treated her SIRVA symptoms for over five years. *Accetta*, 2021 WL 1718202, at *4-5. Although these cases are characterized by multiple multi-month treatment gaps, their treating physicians consistently related the ongoing symptoms to the original SIRVA. While Mr. Kenny argues that his case has involved nearly three years of persistent pain and treatment, the record belies this assertion as previously discussed.

Petitioner's other two comparable cases, *Boyd* and *Binette*, present very different circumstances. *Boyd* involves a petitioner undergoing a manipulation under anesthesia procedure, which although not as invasive a procedure such as shoulder arthroscopy, is sufficiently invasive to count as a surgical procedure and is therefore deserving of more value than cases involving more conservative treatment. *Boyd*, 2024 WL 4720106, at *12; *Edwards v. Sec'y of Health & Hum. Servs.*, No. 21-56V, 2023 WL 6847484 at *3 (Fed. Cl. Spec. Mstr. Sept. 11, 2023). And *Binette* involves a far more severe injury, with the petitioner reporting pain levels of 5-10/10 even three years after vaccination, with her doctor advising that her pain was likely permanent and that surgery would be unlikely to resolve her condition. *Binette*, 2019 WL 1552620, at *14.

Respondent's cases, on the other hand, involve milder injuries than seen here. The *Brennan* petitioner treated her SIRVA for approximately 12 months, and only attended one formal PT session due to the unique circumstance of the petitioner being a physical therapy assistant and her husband being a chiropractor leading to many chiropractic sessions as well as self-treatment primarily with band exercises. *Brennan*, 2024 WL 4977140, at *10. Overall, it was noted that her injury was "on the milder side, and persisted for about a year, with relatively minimal treatment" and that throughout that treatment, she had little or no pain at rest and severe pain only with certain movements. *Id.* Respondent's other case, *Schwalm*, was decided at a Motions Day expedited hearing and the decision awarding damages cited to utilized an abbreviated decision with only brief references to the facts of the case, thereby limiting its usefulness as a comparable case. *See Schwalm*, 2024 WL 1740482, at *2-3.

The instant case bears more in common with cases such as *Russano* and *Mantagas.* Ms. Russano's pain "was fairly significant in the beginning and progressively eased over time, with her movement impairment and pain largely (though not totally) improved within eight months of vaccination" and she underwent 23 PT sessions, an MRI, and a cortisone injection. *Russano v. Sec'y of Health & Hum. Servs.*, No. 18-392V, 2020 WL 3630804 at *4 (Fed. Cl. Spec. Mstr. Jun. 4, 2020) (awarding $80,000.00 for pain and suffering). However, although Ms. Russano treated for les time than Mr. Kenny, she also reported her symptoms far sooner, less than one month following vaccination. *Id.* at *1.

In *Mantagas*, the Court compared the petitioner to the *Russano*, noting that petitioner had suffered “a moderately severe injury for 11 months, which persisted at a milder level for another 18 months” inclusive of a long treatment gap. *Mantagas v. Sec’y of Health & Hum. Servs.*, No. 20-1720V, 2023 WL 4573855, at *7 (Fed. Cl. Spec. Mstr. Jun. 14, 2023). Mr. Mantagas was ultimately awarded $75,000.00 for his pain and suffering with the Court reasoning that although he treated his injury for longer, the *Russano* petitioner required more focused treatment sooner in time and also had preexisting medical conditions that enhanced the pain and suffering. *Id.*

Ultimately, the severity of the SIRVA in this case was roughly equivalent to that experienced by the *Russano* claimant. Although Petitioner’s treatment course was longer, his initial delay of nearly five months contributed to this longer course and is strongly suggestive of an injury that likely was slightly more mild, at least initially, with both petitioners undergoing roughly equivalent treatment courses. Based on the foregoing, I find that Petitioner’s pain and suffering warrants an award of $80,000.00.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, I find that **$80,000.00** represents a fair and appropriate amount of compensation for Petitioner’s actual pain and suffering and **$818.66** represents a fair and appropriate amount for Petitioner’s past unreimbursable expenses.[12]

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of <u>$80,818.66</u> to be paid through an ACH deposit to Petitioner’s counsel’s IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[13]

**IT IS SO ORDERED.**

---

[12] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec’y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec’y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[13] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties’ joint filing of notice renouncing the right to seek review.

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master